UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62670-BLOOM/Valle

MARISSA DIAZ,

    Plaintiff,
v.

STATE OF FLORIDA,
17TH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY,
FLORIDA,

    Defendant.
_____/

## ORDER

This cause is before the Court upon Defendant State of Florida, 17th Judicial Circuit, in and for Broward County, Florida's ("Defendant") Motion for Summary Judgment, ECF No. [29] ("Motion"). The Court has reviewed the Motion, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Motion is granted.

    **I.    Relevant Facts**

In September of 2012, Plaintiff Marissa Diaz ("Diaz"), began working as an administrative assistant in the probate unit of the 17th Judicial Circuit. *See* Defendant's Statement of Material Facts, ECF No. [28] ("Def. SOF"), ¶ 1.[1] After interviewing with Linda Brooks ("Brooks"), a supervisor in the mental health unit, and Diana Sobel ("Sobel"), the Chief of Personnel for the 17th Circuit, Diaz was promoted to a case manager position in the mental health unit in March, 2013. *Id.* ¶¶ 3-5. Diaz's job duties in the mental health unit included responding to "beeps" from courtrooms, also known as "running," writing up competency

---

[1] Where a fact is uncontroverted by the opposing party, the Court cites only to the originating Statement of Facts.

orders, processing reports, making copies, and delivering reports to courtrooms. *Id.* ¶ 7. Diaz covered twenty-two (22) courtrooms, and processed evaluations from judges by entering pertinent information into a database. *See* Plaintiff's Statement of Disputed Facts ("Pl. SOF"), ECF No. [35], ¶ 7. After making copies, Diaz delivered any evaluations or reports needed to the courtrooms. *Id.* Diaz responded immediately if beeped by a courtroom, and her duties required that she travel up and down between courtrooms and her office. *Id.* Diaz was aware of the position's requirements when she applied for the job. Def. SOF ¶ 9.

Diaz testified that she had a heavier workload than some of her co-workers from the beginning of her employment in the mental health unit. *Id.* ¶ 12. The intensity of her job was a concern for Diaz, as she told her supervisors that her co-workers who worked at their desks could "step up" and work more efficiently for the judges and the court. *Id.* ¶ 10. Diaz emailed Sobel in May, 2014 to complain that her duties were "quite grueling" and "quite overwhelming," and noted that she was "confused as to why it has been this way only for the runner case manager position." *Id.*

On August 13, 2014, Diaz informed Brooks that she was pregnant, and shortly thereafter, told Brooks that she wanted to "slow down." *Id.* ¶¶ 13-14. Brooks informed Diaz that she would need to obtain a doctor's note in order to adjust her duties. *Id.* ¶ 14. Thereafter, when Diaz spoke to Sobel about the request, Sobel told Diaz to slow down, and emailed Diaz a medical certification form to complete. *Id.* ¶ 15. Brooks later became aware that Diaz had spoken to Sobel about her pregnancy and request to "slow down," but the parties dispute whether Brooks was aware that Diaz complained to Sobel about the manner in which Brooks treated her after announcing her pregnancy. *See* Def. SOF ¶ 16; Pl. SOF ¶ 16. When Sobel subsequently spoke to Brooks about the meeting with Diaz, Sobel told Brooks that Diaz did not think that she

could perform the functions of her job the way she was.  Def. SOF ¶ 17; *see also* Deposition of Linda Brooks, ECF No. [27-3] ("Brooks Dep."), at 48.  The medical certification that Diaz returned to Sobel on October 10, 2014 stated, "patient is unable to move as fast as before," but aside from "walking at a fast pace," the certification did not list any specific job duties affected by Diaz's pregnancy, and the only accommodation requested was that Diaz be allowed "to perform [her] job slower."  *Id*. ¶ 18.  As a result of the medical certification form, Sobel told Diaz to "slow down and take breaks if she need[ed] to"; Diaz could, and did on occasion, use the benches in the courthouse to rest; Diaz would remain near the courtrooms between pages instead of rushing back and forth from her office to the courtrooms; and Brooks sometimes helped Diaz conduct her runs.  *Id*. ¶ 19.

According to Diaz, despite having made past complaints of unfair treatment prior to her pregnancy, Brooks treated her differently and worse after she notified Brooks of her pregnancy.  *Id*. ¶¶ 44-45 Pl. SOF ¶¶ 44-45.  Even though Diaz complained about being asked about her "personal business," she has no recollection of reporting pregnancy discrimination, even though she believes she implied to Sobel that she was "very uncomfortable" with Brooks.  Def. SOF ¶ 46; Pl. SOF ¶ 46.

*Events leading to Diaz's termination*

The mental health unit has its own two-drawer cabinet located outside of Diaz's cubicle, containing office supplies for the use of mental health unit employees.  *Id*. ¶ 21.  In addition, the 17th Circuit Court Administration, of which the mental health unit is a part, has a supply room located down the hall from Diaz's cubicle.  *Id*. ¶¶ 6, 20.  Despite an office policy requiring employees to submit office supply requests in writing to a supervisor, employees obtained supplies without strict adherence to office policy.  *Id*. ¶ 23-24; Pl. SOF ¶ 24.  Bert Rodriguez

3

("Rodriguez") is a purchasing technician, whose job duties included assisting employees to obtain office supplies. Def. SOF ¶ 24. According to Rodriguez, he frequently provided "odds and ends" to employees in the mental health unit but did not provide items in bulk to individual employees. *See* Deposition of Alberto Rodriguez, ECF No. [27-4] ("Rod. Dep."), at 14-15.

On October 21, 2014, Diaz went to the supply room and asked Rodriguez for supplies. Def. SOF ¶ 25. Diaz took the following items from the supply room: 24 mechanical pencils, 2 refill packs for mechanical pencils, 72 pencils, 144 eraser caps, 36 Post-It note pads, 12 highlighters, 4 dry erase markers, 24 Sharpies, 10 rolls of tape, and 12 glue sticks. *Id.* ¶ 26. Rodriguez offered to take the box containing the supplies to Diaz's cubicle for her. However, Diaz declined and instead put them in an empty cubicle. *Id.* ¶ 27. The parties disagree on the proper characterization of the location in which Diaz left the box and specifically whether it could be considered a secluded area. *See* Def. SOF ¶ 27; Pl. SOF ¶ 27. Nevertheless, Rodriguez later took the box of supplies to Diaz's cubicle because she was pregnant and he did not want her to carry it. Def. SOF ¶ 27; *see also* Rod. Dep. at 29.

Brooks observed Rodriguez deliver the box of supplies to Diaz's cubicle, and that most of the supplies in the box were available in the mental health unit's supply cabinet. Def. SOF ¶¶ 28, 30. When Brooks asked him what the box was, Rodriguez responded that Diaz had requested it and that he was leaving it there. Rod. Dep., at 30. Based upon the quantities of supplies contained in the box, Brooks believed that there could be an issue. Brooks Dep. at 62-63. Brooks told Sobel about her observations and Rodriguez's statement. Def. SOF ¶ 31. Later that day, Sobel and Brooks met with Diaz and asked her about the supplies and why she needed them. Def. SOF ¶ 32. Diaz responded that she needed the box of supplies "to use." Deposition of Marissa Diaz, ECF No. [27-1] ("Diaz Dep."), at 136. Brooks and Sobel were not satisfied

with Diaz's response, which Sobel thought to be evasive. Def. SOF ¶ 33; *see* Sobel Dep. at 19. Even though Diaz believed that Brooks and Sobel thought she was trying to steal the supplies, she did not offer an explanation because she was concerned about being overheard by her co-workers. Def. SOF ¶ 35.

After speaking to Diaz, Sobel recommended termination based on her belief that Diaz was attempting to steal state property. *Id*. ¶ 38. According to Sobel, the supplies Diaz took were "more supplies than any one individual would need . . . boxes of items, some of which had no bearing on her job." *Id*.; *see also* Sobel Dep., at 18. Though Sobel made the recommendation, the ultimate decision to terminate Diaz was made by Kathy Pugh, the Trial Court Administrator, who did not know that Diaz was pregnant until after she made the decision to terminate. Def. SOF ¶ 39-40. Diaz was informed on October 28, 2014 that her employment was terminated, three months after informing Brooks of her pregnancy. Def. SOF ¶ 43.

## II.   Legal Standard

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d

759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.  Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla.

Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993))). In particular, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). It is through this lens that the Court analyzes the instant Motion.

### III. Discussion

Diaz's Amended Complaint asserts four (4) counts: pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and the Florida Civil Rights Act of 1992, Fla. Stat. 760.01, *et seq*. ("FCRA") (Counts I and III); and retaliation under Title VII and the FCRA

(Counts II and IV). *See generally* ECF No. [10] ("Amended Complaint").[2] Defendant moves for summary judgment on all claims. *See generally* Motion.[3]

### A. Diaz's Pregnancy Discrimination Claims Fail

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As amended by the PDA in 1978, Title VII includes "pregnancy, childbirth, or related medical conditions" in its proscription on discrimination "because of sex." *See* 42 U.S.C. § 2000e(k). The examination of a discrimination claim predicated upon sex, including pregnancy, and that predicated upon any other discrimination is the same. *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312 (11th Cir. 1994) ("Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory

---

[2] The Court notes that the Amended Complaint designates the factual allegations beginning at ¶ 5 as Count I; however, given the overall structure of the Amended Complaint and the designation of the following count also as Count I, the Court assumes that the designation was a typographical error.

[3] "The FCRA is patterned after Title VII, and thus federal case law dealing with Title VII is applicable to employment discrimination claims brought under Florida law." *Dar Dar v. Associated Outdoor Club, Inc.*, 248 F. App'x 82, 84 n.1 (11th Cir. 2007) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 n. 2 (11th Cir. 1999)). Further, "[t]he analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-23 (11th Cir. 1994) (citing *Maddox v. Grandview Care Ctr., Inc.*, 780 F.2d 987, 989 (11th Cir. 1986)); *Berrios v. Univ. of Miami*, 920 F. Supp. 2d 1274, 1277 (S.D. Fla. 2012) ("[I]t was the intent of Congress, as expressed in the PDA, to prohibit pregnancy discrimination in Title VII, and, under established case law, Florida statutes patterned after federal statutes in the same manner that the federal statutes are construed . . . ."); *see also Hubbard v. Meritage Homes of Fla., Inc.*, 520 F. App'x 859, 862 (11th Cir. 2013) (deeming proper district court's assessment of FCRA pregnancy discrimination claim on the same basis as Title VII pregnancy discrimination claim). Accordingly, the Court examines Diaz's claims under the PDA, Title VII, and FCRA contemporaneously.

framework prohibiting sex-based discrimination."). Florida's equivalent, the FCRA, contains an identical prohibition on sex, pregnancy, and race discrimination. *See Torres-Skair v. Medco Health Sols., Inc.*, 595 F. App'x 847, 852 (11th Cir. 2014) ("Title VII and the FCRA prohibit certain employers from discriminating 'against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'" (citing 42 U.S.C. § 2000e–2(a)(1); Fla. Stat. § 760.10(1)(a))).

Evidence of discrimination may be either direct or circumstantial. *Id.* (citing *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012)). "Direct evidence is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption." *Id.* (citation omitted). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a protected classification, constitute direct evidence of discrimination." *Kilpatrick v. Tyson Foods, Inc.*, 268 F. App'x 860, 862 (11th Cir. 2008). Where a plaintiff cannot demonstrate her case through direct evidence but instead relies on circumstantial evidence, courts are to utilize the *McDonnell Douglas* burden-shifting framework. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) (citation omitted); *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). In her Opposition to Defendant's Motion, ECF No. [36] ("Response"), Diaz concedes that her claims involve circumstantial evidence.

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case for discrimination by showing that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees [not belonging to the class] more favorably; and (4) she was qualified to do the job." *McCann*, 526 F.3d at 1373 (citing *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)).

Once a plaintiff establishes her prima facie case, the burden shifts to the employer who then must articulate a legitimate, non-discriminatory reason for the employment action. *Id.* (citing *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006)); *Wilson*, 376 F.3d at 1087. If the employer is able to satisfy this burden of production, the presumption of discrimination is rebutted, and the burden once again falls on the plaintiff to demonstrate that the alleged reason is actually a pretext for discrimination. *Wilson*, 376 F.3d at 1087. The parties do not dispute that Diaz was a member of a protected class, was qualified for her position, and suffered an adverse employment action. Thus, only the third prong of Diaz's prima facie case is brought to issue. According to Defendant, Diaz cannot show that she was treated differently from any other similarly-situated non-pregnant employees.

"To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects." *MackMuhammad v. Cagle's Inc.*, 379 F. App'x 801, 804 (11th Cir. 2010) (quoting *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)). "Where . . . the plaintiff claims that the employer discriminated against her in meting out discipline, in determining whether the plaintiff and the employees she says are similarly situated, '[courts are to] evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Cuevas v. Am. Exp. Travel Related Servs. Co.*, 256 F. App'x 241, 243 (11th Cir. 2007) (quoting *Burke-Fowler*, 447 F.3d at 1323); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)) ("In order to be considered 'similarly situated,' the compared employees must have been 'involved in or accused of the same or similar conduct,' yet 'disciplined in different ways' for that conduct."); *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1265 (11th Cir. 1996) ("Disparate treatment exists

when similarly situated workers are treated differently even though they have committed similar acts."). "We require the quantity and quality of the comparator's misconduct to be 'nearly identical' to prevent judges from second-guessing employers' reasonable decisions." *Burke-Fowler*, 447 F.3d at 1323 (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).[4] In response to Defendant's contention, Diaz points to the other mental health unit employees who obtained supplies without following proper policy, and Rodriguez, who also violated policy by helping Diaz obtain the supplies. Diaz argues that because these employees were not disciplined, or only reprimanded, she was treated less favorably.

At deposition and in response to Defendant's Motion, Diaz attempts to raise additional comparators, focusing specifically on Malikah Franklin and Vinnette Hinds, also mental health unit employees. Response, at 12. Diaz argues that workplace rules applied differently to them because they were permitted to stay on the floor and chat, while Diaz was instructed to return immediately to her floor, and that they arrived late to work, left early, and ate lunch when they pleased. *Id*. Not only are Franklin and Hinds not "similarly situated in all relevant respects," *MackMuhammad*, 379 F. App'x at 804, as they held different positions than Diaz, but also any allegations concerning Franklin and Hinds are conspicuously absent from the operative pleading. Diaz may not raise new allegations in response to a motion in order to avoid summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (plaintiff may not amend through argument opposing summary judgment). Although the allegations concerning

---

[4] Although the "nearly identical" standard was called into question in *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1334 (11th Cir. 2000), the Eleventh Circuit nevertheless continues to apply the standard, "because when a later panel decision contradicts an earlier one, the earlier panel decision controls." *Cuevas*, 256 F. App'x at 243 (citing *Burke-Fowler*, 447 F.3d at 1323 n.2) (internal quotations omitted); *see also Archie v. Frank Cockrell Body Shop, Inc.*, 581 F. App'x 795, 798 (11th Cir. 2014) (stating that the "nearly identical" standard applies in evaluating whether an employee is similarly situated).

Franklin and Hinds are not entirely new claims in the strictest sense, they are, nonetheless, improper allegations for consideration at this late stage. Furthermore, Diaz's arguments with respect to the differences in treatment are undercut by her own deposition testimony. *See, e.g.* Diaz Dep. at 48-49.

Additionally, Diaz cannot satisfy this element of her prima facie case because she fails to sufficiently establish that the other mental health unit employees' misconduct was "nearly identical." Diaz argues that the other mental health employees who took supplies without following the proper request procedure violated the same work rule as Diaz. However, their misconduct is distinguishable in both quantity and quality. First, there is no record evidence to suggest that the other mental health employees took the amount of supplies that Diaz did. Rodriguez testified that employees would take "odds and ends," but there is no record evidence that any of the individual employees had ever taken a similar quantity of supplies. Moreover, Defendant asserts that Diaz was terminated for suspected attempted theft of office supplies, which involves the violation of an entirely different policy than the proper procedure to obtain supplies. In fact, Sobel stated that "[t]he issue was not that she went against policy and obtained the supplies contrary to the way she was supposed to. It was how many supplies she had taken that had no bearing on her job and [] why she would put them in an area that was close to an exit, not anywhere near her area and decline the assistance of the purchasing person [] offering to bring it to her area. It was incredibly suspicious." Sobel Dep. at 24-25. Diaz has not presented any evidence of any other employee suspected of attempted theft who was treated in a different manner. For this reason, setting aside the dispute over whether the area where Diaz left the box of supplies was "secluded" or whether the supplies were the type used in her unit, Diaz cannot point to any other employee who obtained supplies under similar circumstances.

Diaz's contention regarding Rodriguez's more favorable treatment is similarly flawed. Diaz contends that she was terminated, while Rodriguez received only a reprimand, for the same conduct. However, contrary to Diaz's assertion, Rodriguez's conduct was not the same. While it is true that both Diaz and Rodriguez violated policy regarding obtaining supplies, Rodriguez was not suspected of attempted theft of supplies. *See* Sobel Dep. at 25.

Nevertheless, a plaintiff can survive summary judgment if there is sufficient circumstantial evidence to create a triable issue regarding an employer's discriminatory intent. *Smith*, 644 F.3d at 1328. "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)). Diaz points to five principal factual tiles that she contends collectively form a sufficient mosaic. First, Diaz had a demanding job, which she performed well, albeit more slowly once she was pregnant. Second, Brooks wrote in her calendar that Diaz was pregnant during the August, 2014 meeting when Diaz first informed her. Third, Brooks began to be rude to her and applied work rules differently to her after announcing her pregnancy. Fourth, when Diaz asked to be moved closer to the courtrooms, or to another position entirely due to swelling in her legs and cramping, Brooks became frustrated. This was because Diaz claimed she could not perform the job with the same intensity as before, and would require Brooks's help. Fifth, Diaz later spoke to Sobel, and allegedly complained about Brooks's frustration and resulting treatment of her, giving the example that Brooks told her that she had to return to her office immediately after completing her work in the courtrooms, while another runner, Jennifer Green, was permitted to "stay and chat," and other employees covering runs were able to take lunch when they chose and come and go as they pleased. Furthermore,

when Diaz spoke to Sobel, Sobel mentioned that Brooks was frustrated because "other people have been pregnant and they have been able to do the job." Diaz Dep. at 38. Finally, Diaz was fired two and a half weeks later.[5]

Diaz argues that, as in *Hamilton v. Southland Christian School*, 680 F.3d 1316 (11th Cir. 2012) and *Chapter 7 Trustee*, the circumstantial evidence is sufficient to raise a triable issue of fact. The Court disagrees. *Hamilton* and *Chapter 7 Trustee* are distinguishable for the reasons discussed below. Diaz further argues that Sobel's statement alone is indistinguishable from the comment made by the supervisor in *Hamilton* that supported a finding of sufficient circumstantial evidence. While Diaz fails to identify to which comment in *Hamilton* she is referring, the facts and circumstances presented there are inapposite. In *Hamilton,* the supervisor/administrator made a number of comments, none of which independently supported the court's conclusion that the plaintiff presented sufficient circumstantial evidence to raise a reasonable inference of discriminatory intent. The court in *Hamilton* noted as follows:

> Hamilton presented evidence that, in making the decision to fire her, Southland was more concerned about her pregnancy and her request to take maternity leave than about her admission that she had premarital sex. She testified at deposition that, after she told the Ennises about her pregnancy but before she told them she had conceived before getting married, John Ennis "put his head back and he said, we feared something like this would happen." Hamilton testified that John Ennis told her that she was going to have to "take the year off" because replacing a teacher taking maternity leave after the school year had started was hard to do. She also testified that it appeared to her the Ennises' primary concern was her request for maternity leave. According to Hamilton's deposition testimony, at some point during the meeting, she asked John Ennis: "[W]hat is the issue here? Is it

---

[5] In her response, Diaz states that she was fired less than two weeks after the doctor's medical certification regarding Diaz's need to perform her job more slowly. While a slight difference, the record evidence, however, is that Diaz returned the medical certification to Sobel on October 10, and was terminated on October 28, 2014.

>because of the coverage? Or is it because of the premarital conception? And he said both reasons."

680 F.3d at 1320-21. In addition, the plaintiff in *Hamilton* presented evidence that called into question the truth of the supervisor's purported reason for firing her. *Id*. Hamilton testified that she expressed to the administrator that she had prayed for forgiveness for engaging in premarital sex, which conflicted with testimony by the administrator, who said that he never heard Hamilton say she was sorry and he would not have fired her if she had. *Id*.

Similarly, in *Chapter 7 Trustee*, the record was replete with circumstantial evidence indicating discriminatory intent, including admissions that the plaintiff's pregnancy was a "substantial or motivating factor" in her termination and that her termination was not based on any problems with misconduct or work performance, and an acknowledgment—contained in the letter reprimanding the supervisor for unilaterally terminating the pregnant plaintiff—that the supervisor had violated company policy and acted in a totally unacceptable manner that constituted discrimination under Title VII,. 683 F.3d at 1257.

The facts in this case are significantly different and, considered as a whole, do not present a triable issue. As already discussed, the record does not reflect that Diaz was treated less favorably than her non-pregnant co-workers. In fact, the record demonstrates that Diaz took issue with her duties as a runner and the differences between the expectations of a person in her position and those of her co-workers in other positions even before she was pregnant. She was aware of the demands of her job when she applied for it, and evidently, those demands were an issue for her prior to her pregnancy. *See* Diaz Dep. at 44. Furthermore, Diaz testified that she felt she was treated unfairly prior to her pregnancy. *Id.* at 46. The record also reflects that once she became pregnant, Diaz was permitted to work more slowly as she requested, and Brooks helped her on her runs at times. She testified that, contrary to Brooks's instruction that she

15

return immediately to her office, she would stay upstairs and not return to her office between pages once she was pregnant and was told to slow down. *Id*. at 48-49. Diaz further testified that Brooks apparently "watched" her in a manner different from the other employees, though this took place throughout her employment as a runner. *Id*. at 51. Moreover, with respect to Brooks's apparent frustration with Diaz's pregnancy, Diaz testified that she thought Brooks became upset because she did not want to share details about her personal life when Brooks asked. *Id*. at 73. As a result, the circumstantial evidence does not give rise to a reasonable inference of discriminatory intent.

Diaz does not dispute that she took a large quantity of supplies from the supply room. Despite her awareness that Brooks and Sobel thought she might be trying to steal state property, she did not attempt to disabuse them of that belief when questioned by them. *Id*. at 106. Furthermore, Diaz's contention that the timing of her termination was suspect deliberately overlooks the fact that a week before her termination, she was suspected of attempting to steal state property. Finally, the fact that Brooks wrote on the calendar the day Diaz shared that she was pregnant is little indication of discriminatory intent, even coupled with Brooks's apparent frustration, which, as already noted, Diaz attributes to her reluctance to share details of her personal life upon request.

Diaz next maintains that several facts call into question the truth of the stated reason for Diaz's dismissal, i.e. suspected attempted theft. Diaz points first to the fact that her personnel file did not contain a reason for her dismissal, and she was not told the reason for her dismissal. However, Sobel testified at deposition that the 17th Judicial Circuit's practice is not to state the reasons for a person's discharge in the personnel file, or to the person herself. Sobel Dep. at 30. There is no record evidence to suggest otherwise. Diaz then points to "unequivocal" testimony

from Rodriguez that he did not have a conversation with anyone regarding the supplies Diaz obtained from the supply room. Record evidence establishes that Diaz's claim is entirely inaccurate. Rodriguez testified that when Brooks saw him with the box and asked him what it was for, he told her that Diaz requested it and he was leaving it in Diaz's cubicle. Rodriguez Dep. At 29-30. Moreover, Sobel testified that she based her conclusion on a combination of factors, including Diaz's answer when questioned, the quantity of supplies at issue, and the fact that the mental health unit had a stocked supply cabinet nearby. Sobel Dep. at 18-19. Separately or together, these facts do not call into question the truth of the stated reason for Diaz's termination.

Because Diaz cannot make out a prima facie case of pregnancy discrimination, her claims cognizable under Title VII, the PDA and the FCRA fail as a matter of law.

### B. Diaz's Retaliation Claims Also Fail

Akin to a discrimination claim, a retaliation claim is also subject to the *McDonnell Douglas* burden-shifting framework, albeit a slightly modified one. *See Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 890-91 (11th Cir. 2015) (citing *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007); *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) ("When a plaintiff offers only circumstantial evidence to prove her Title VII claim, as Plaintiff does here, we employ the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* . . . ."). "To establish a prima facie Title VII retaliation claim, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) causation." *Id.* at 891 (citing *Chapter 7 Trustee*, 683 F.3d at 1258; *see also Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1334 (S.D. Fla. 2012). "[A]n adverse retaliatory action under Title VII is one that is 'harmful to the point that [it] could

17

well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Joseph*, 839 F. Supp. 2d at 1335 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Defendant concedes that Diaz's termination is an adverse employment action. It claims that, assuming *arguendo* that Diaz engaged in a protected activity, she nevertheless cannot satisfy the causation element. The purported statutorily protected activity in this case was Diaz's complaint to Sobel regarding Brooks's treatment of her, which she believed to be motivated by pregnancy discrimination.

However, the parties appear to dispute the necessary showing regarding the third element of causation. Defendant maintains that in order to show causation, Diaz's complaint must be the but-for cause of her termination, citing *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013). On the other hand, Diaz argues that she need only show that the protected activity and adverse action are not wholly unrelated, citing *Goldsmith v. Bagby Elevator Company*, 513 F.3d 1261, 1277-78 (11th Cir. 2008). Defendant's statement of the showing required is accurate. *See Mealing v. Ga. Dept. of Juvenile Justice*, 564 F. App'x 421, 426-27 (11th Cir. 2014) (acknowledging that a plaintiff claiming retaliation must show but-for causation); *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 981 (11th Cir. 2014) (same); *Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 779 (11th Cir. 2014) (affirming summary judgment based on plaintiff's failure to establish but-for causation as element of the prima facie case).

Even assuming that Diaz in fact engaged in a protected activity when she spoke to Sobel about Brooks's treatment of her, she cannot show that the protected activity was the but-for cause of her termination. Diaz attempts to demonstrate causation by showing temporal proximity, but in order to evidence causation, such proximity must be "very close." *See Clark*

*Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. . . . But mere temporal proximity, without more, must be 'very close.'" (internal citations omitted)). Diaz argues that she complained to Sobel about Brooks's seeming frustration about her pregnancy and the resulting treatment she was receiving in September 2014, and that Diaz was terminated one month later. In addition, Diaz claims that the ultimate decision-maker, Kathy Pugh, failed to conduct an independent investigation and relied only upon Brooks's and Sobel's biased recommendation to terminate Diaz. However, the record reflects that Brooks did not recommend termination. Sobel recommended termination to Kathy Pugh only after her conversation with Diaz regarding the box of supplies and based upon her suspicion that Diaz was attempting to steal supplies; and that Kathy Pugh never spoke to Brooks. Sobel Dep. at 47-48; Deposition of Kathy Pugh, ECF No. [27-5] ("Pugh Dep."), at 17, 19. Thus, even assuming Brooks possessed the requisite discriminatory intent, Diaz does not point to any record evidence which would indicate that Diaz's complaint to Sobel about Brooks's treatment of her was the but-for cause of Pugh's decision to terminate her.

Moreover, Diaz disregards the undisputed fact that in between her conversation with Sobel and her termination, she was suspected of attempted theft of state property, which is an intervening act of misconduct. *See Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011) ("Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action."). She, therefore, fails to show the requisite but-for causation necessary to establish a prima facie case of retaliation. *See Schoebel v. Am. Integrity Ins. Co. of Fla.*, No. 8:14-cv-426-T-27AEP, 2015 WL 4231670, at *3 (M.D. Fla. July 10, 2015)

(granting summary judgment finding intervening act of misconduct sufficient to break causal connection in prima facie case).

### IV. Conclusion

Because Diaz has failed to establish a prima facie case of either pregnancy discrimination or retaliation, the Court need not address the *McDonnell-Douglas* burden-shifting framework, and summary judgment is appropriate. Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [29]**, is **GRANTED**. Final judgment will be entered by separate order. All pending hearings are **CANCELLED.** The Clerk is instructed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of November, 2016.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

cc: counsel of record